**FILED**

**DECEMBER 6, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE REYES and SONIA OLAZABA, on behalf of themselves individually and as the Parents and Guardians of DENISE FERNANDEZ and KIMBERLY FERNANDEZ, minors, | ) ) ) ) | **07 C 6877** |
| Plaintiffs, | ) ) | **JUDGE BUCKLO** |
| v. | ) ) | **MAGISTRATE JUDGE MASON** |
| | ) | No. |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS JEROME FINNEGAN, Star #5167, CARL SUCHOCKI, Star #18391, JAMES ELDRIDGE, Star #2081, JOHN BLAKE, Star #454, ERIC OLSEN, Star #19456, GREGORY INSLEY, Star #14260, FRANK VILLAREAL, Star #10438, B. CORCORAN, Star #17069, J. HURLEY, STAR #17516, B. MAKA, Star #12206, G. SALINAS, Star #10293, B. RICE, Star #16059, OFFICER HANDZEL, Star #8116, OFFICER MARKIEWICZ, Star #17092, OFFICER FERGUSON, Star #14213, OFFICER NELLIGAN, Star #8953, OFFICER HARVEY, Star #9165, OFFICER MCGOVERN, Star #18856, OFFICER CASE, Star #1753, OFFICER CONNELLY, Star #16869, OFFICER FOLEY, Star #10613, SUPERINTENDANT PHILIP CLINE, DEBRA KIRBY, MAYOR RICHARD DALEY, and UNKNOWN CHICAGO POLICE OFFICERS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge<br><br>Magistrate Judge |
| Defendants. | ) ) | JURY DEMANDED |

## COMPLAINT

NOW COME the plaintiffs, JOSE REYES and SONIA OLAZABA, on behalf of

themselves individually and as the Parents and Guardians of DENISE FERNANDEZ and

KIMBERLY FERNANDEZ, minors, through their attorneys, A LAW OFFICE OF CHRISTOPHER R. SMITH, Jared S. Kosoglad and Christopher R. Smith, and for their Complaint against defendants CITY OF CHICAGO, CHICAGO POLICE OFFICERS ERIC OLSEN, Star #19456, GREGORY INSLEY, Star #14260, FRANK VILLAREAL, Star #10438, JEROME FINNEGAN, Star #5167, CARL SUCHOCKI, Star #18391, JAMES ELDRIDGE, Star #2081, JOHN BLAKE, Star #454, B. CORCORAN, Star #17069, J. HURLEY, STAR #17516, B. MAKA, Star #12206, G. SALINAS, Star #10293,B. RICE, Star #16059, OFFICER HANDZEL, Star #8116, OFFICER MARKIEWICZ, Star #17092, OFFICER FERGUSON, Star #14213,OFFICER NELLIGAN, Star #8953, OFFICER HARVEY, Star #9165, OFFICER MCGOVERN, Star #18856, OFFICER CASE, Star #1753, OFFICER CONNELLY, Star #16869, OFFICER FOLEY, Star #10613 SUPERINTENDANT PHILIP CLINE, DEBRA KIRBY, MAYOR RICHARD DALEY and UNKNOWN CHICAGO POLICE OFFICERS, state as follows:

## INTRODUCTION

1.    This is a civil action seeking damages against defendants for (1) conducting affairs of various enterprises, including the City of Chicago, Chicago Police Department, and Special Operations Section, through a pattern of racketeering activity against the plaintiffs; (2) against defendant City of Chicago for maintaining widespread policies and practices in furtherance of the racketeering; (3) for depriving plaintiffs of rights guaranteed by the U.S. Constitution; and (4) for related State law claims.

## JURISDICTION

2.       This action is brought pursuant to 18 U.S.C. §§ 1961, *et. seq.*, the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), and pursuant to 42 U.S.C. §§ 1983, 1985,

and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  The

jurisdiction of this Court is also invoked pursuant to the Civil Rights Act, 42 U.S.C., § 1983, and

§ 1985; the judicial code 28 U.S.C., § 1331 and 1343 (a); the Constitution of the United States;

and pendent jurisdiction as provided under U.S.C., § 1367(a).  Plaintiff further invokes the

supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims

arising out of state law.

## PARTIES

3.       Plaintiffs are U.S. citizens who currently reside in Cook County, IL.  At all times

relevant to this Complaint, plaintiffs lived together in the same home.

4.       Defendant Chicago Police Officers Jerome Finnegan, Star #5167, John Blake,

Star #454, James Eldridge, Star #2081, Frank Villareal, Star #10438, Carl Suchocki, Star

#18391, Officer McGovern, Star #18856, Eric Olsen, Star #19456, Gregory Insley, Star #14260,

B. Corcoran, Star #17069, J. Hurley, Star #17516, B. Maka, Star #12206, G. Salinas, Star

#10293, B. Rice, Star #16059, Officer Handzel, Star #8116, Officer Markiewicz, Star #17092,

Officer Ferguson, Star #14213, Officer Nelligan, Star #8953, Officer Harvey, Star #9165, Officer

Case, Star #1753, Officer Connelly, Star #16869, Officer Foley, Star #10613, and Unknown

Chicago Police Officers, collectively the "Officer Defendants," were, at the time of this

occurrence, duly licensed Chicago Police Officers.  They engaged in the conduct complained of

while on duty in the course and scope of their employment and under color of law. They are sued in their individual capacities.

5.    Defendant City of Chicago, ("City") is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of all other defendants. At all times relevant hereto, all defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the State of Illinois and the City of Chicago, and within the scope of their employment with defendant institutions.

6.    Defendant Philip Cline was the Superintendent of the Chicago Police Department beginning in August 2003. Philip Cline resigned in April 2007. As Superintendent, Cline was responsible for the overall management of the Chicago Police Department. At all times material to this complaint, Cline acted in the course and within the scope of his employment. Cline is sued in his official capacity.

7.    Debra Kirby is the Assistant Deputy Superintendent that heads the Internal Affairs Division of The Chicago Police Department, and has been during all times relevant to this complaint. At all times material to this complaint, Kirby acted in the course and within the scope of her employment. Kirby is sued in her official capacity.

8.    Mayor Richard Daley is the mayor of the City of Chicago, and has been at all times relevant to this complaint. Richard Daley is the highest level executive and policymaker for defendant "City", and is responsible for faithful execution of Chicago's statutes and laws. Mayor Richard Daley is sued in his official capacity.

4

## FACTS RELATED TO THE OFFICER DEFENDANTS

9.     On or about March 26, 2004, the Officer Defendants made an agreement with each other to violate the Constitutional rights of and criminally victimize the patrons of Caballo's bar.

10.     On March 27, 2004, at 12:30 a.m., Jose Reyes was inside Caballo's bar as a patron, when the Officer Defendants, numbering over 25, surged through the front door of Caballos.  Within seconds the Defendant Officers packed the crowded bar.

11.     Without any lawful basis, unknown Officer Defendants searched plaintiff Reyes, and unknown Officer Defendants searched every other patron.

12.     Without any lawful basis, unknown Officer Defendants seized in excess of $1000.00 U.S. currency from plaintiff Reyes, which property was never inventoried or accounted for.  Unknown Officer Defendants placed plaintiff Reyes under arrest.

13.     Unknown officer defendants beat plaintiff Reyes with a club, while plaintiff Reyes sat in squad car helplessly handcuffed.

14.     Unknown Officer Defendants transported plaintiff Reyes to a nearby liquor establishment, wherein unknown Officer Defendants arrested three men and one woman.

15.     Unknown Officer Defendants transported plaintiff Reyes to his home.

16.     Unknown Officer Defendants, without knocking or announcing their presence, entered the home of the plaintiffs.  Throughout the course of the invasion into plaintiffs' home, unknown officer defendants displayed clubs and/or other weapons.

17.     Unknown Officer defendants entered the home of plaintiffs with an intention to

violate the constitutional rights of the persons inside and to steal the property of plaintiffs.

18.     Unknown officer defendants entered the room of plaintiffs Denise and Kimberly Fernandez.  At the time of the incident, said plaintiffs were twelve and nine years old respectively.

19.     Unknown officer defendants awoke the sleeping children, shined their flashlights in their faces, shined their flashlights about the room, and searched the room.  The unknown officer defendants searched the room of the sleeping children with the intention of violating the Constitutional rights of the sleeping children, plaintiffs Denise and Kimberly Fernandez, and with the intention of stealing plaintiffs' property.

20.     Unknown Officer defendants searched nearly every place inside plaintiffs' house, including the basement and garage.  Ms. Olazaba, carrying one year old Jonathan Reyes, followed the unknown Officer defendants.

21.     The unknown Officer defendants seized the personal property of Plaintiffs, including jewelry, and the unknown Officer defendants destroyed the property of plaintiffs.

22.     The named defendant police officers and Unknown Chicago Police Officers conspired and agreed amongst themselves to brutally beat Plaintiff Reyes, to hide evidence of the beating, to destroy evidence of their misconduct, home invasion, and illegal searches, to conceal officers' identities and by covering up badge numbers. In furtherance of this conspiracy, defendant officers filled out and filed false and incomplete police reports relative to the arrests and injuries described in this complaint.

**Additional Conspiratorial Activities**

23.    Defendants arrested another man, Gregorio Martinez, during the same raid where they arrested Mr. Reyes. After one of Mr. Martinez' arresting officers testified under oath at the criminal hearing of Gregorio Martinez, Mr. Martinez' criminal attorney gave Cook County prosecutors a copy of the Caballo surveillance tapes that unequivocally proved that the defendant arresting officer had perjured himself.

24.    Cook County prosecutors continued to rely on the sworn testimony of officers known to have perjured themselves.

25.    Cook County prosecutors provided the Internal Affairs Division a copy of the Caballo surveillance tapes in 2004.

26.    IAD never investigated the tapes and never recommended criminal charges against the officers in the tapes.

27.    Defendant Cline, in concert with First Deputy Dana Starks, other Assistant Deputy Superintendents, Chiefs and their deputies, defendant Debra Kirby, and other high ranking supervisory staff obstructed the efforts of federal, state, and local law enforcement to end the City of Chicago's racketeering enterprise.

28.    All of the named defendants committed acts in furtherance of the conspiracy alleged in this case between 2002 and 2006, at a minimum.  The City of Chicago's racketeering enterprise included hundreds of overt acts in furtherance of its criminal conspiracy.

29.    Plaintiffs were terrified to come forward because of the vast law enforcement apparatus arrayed against them. The SOS conspiracy involved either directly or in complicity

many parties including: the Special Operations Section itself, the Chicago Police Department, the Internal Affairs Division of the Chicago Police Department, the State's Attorney's office, the Office of Professional Standards, and high ranking members of the Chicago municipal government. Only when the facade surrounding the SOS section began to crumble did plaintiffs feel safe coming forward with their claims.

30.    The conspiracy and cover-up related to the Special Operations Section continues to this day. Even though many SOS officers have been indicted, many have simply been reassigned, and the City refuses to acknowledge its role in creating the scandal. In light of certain SOS officers' willingness to solicit murder, even now Mr. Reyes fears for the safety of his family, stemming from possible retaliation for filing of this lawsuit.

### Racketeering Activities

31.    The Special Operations Section of CPD, which includes several defendants in this action, committed hundreds of racketeering predicates between 2002 and 2007, including but not limited to kidnapping, robbery, extortion, dealing controlled substances, obstruction of justice, obstruction of Federal, State, and local law enforcement, obstruction of criminal investigations, intimidation of witnesses, retaliation against witnesses, interference with commerce by threats and violence, influencing, delaying, and preventing testimony, and hindering, delaying, and preventing the communication of federal offenses to law enforcement agencies and judicial officers.

32.    The most common method of the defendants' racketeering scheme began with a kidnapping, wherein defendants targeted a victim on the basis of race, socioeconomic status,

and/or criminal history.  Defendants used their badges and weapons to handcuff a victim, often without any legal justification.

33.     Once the victim was handcuffed, the defendants often stole U.S. currency and any other valuable personal effects from that victim.  The defendants, holding their victim under the threat of gunpoint, would further demand drugs and guns in an effort to locate and steal U.S. currency.

34.     If the victim claimed ignorance or otherwise did not cooperate in the robbery, defendants used physical force, rising to the level of torture in some instances, to compel information.

35.     The defendants would then proceed to the victim's home and without any legal justification would enter that home with their guns drawn.  Defendants would indiscriminately point their weapons at victim's spouses, children, infants, and any other person present for the home invasion and robbery.  Defendants would search the home, rob its occupants of valuable possessions and U.S. currency, and charge the victim with often unwarranted criminal offenses, most commonly possession of a controlled substance or possession of a firearm.

36.     In furtherance of their racketeering enterprise, defendants would obtain quantities of controlled substances, often obtained through other drug arrests, and other firearms to threaten and plant against their victims.

37.     Defendants often testified at the criminal trials of their victims, locking them behind bars to discredit any claims of robbery, torture, or other crimes, by the victim.

38.     Supervisory SOS personnel, including but not limited to defendants named herein,

trained officers in organized criminal methods and tactics to aid the commission of the crimes described throughout this Complaint and taught officers how to avoid detection and punishment for serious felonies.

39. In the event a racketeering officer became the subject of possible detection, the Supervisory Defendants, including Cline, Kirby, and Dana Starks, pursuant to the below described City of Chicago racketeering policies, rejected and conspired to reject claims found valid by IAD or OPS.

40. The City of Chicago and Mayor Richard Daley employ overt policies and practices in furtherance of the City of Chicago's racketeering enterprise.

41. The City of Chicago never investigates and dismisses any and all complaints of misconduct against police officers unless the complainant makes a sworn statement. Even when providing a sworn statement is impracticable, such as when criminal charges remain pending against the complainant, the City of Chicago dismisses the complaint. The City of Chicago's failure in this regard has the effect of encouraging police officers to employ unlawful means to achieve unlawful purposes.

42. The City of Chicago fails to investigate criminal offenses committed by police officers. The City of Chicago performs no criminal investigation into the crimes of police officers. The City of Chicago's failure in this regard is a deliberate and intelligent choice made by its policy makers to shield police misconduct from public scrutiny. The City of Chicago's failure in this regard has the effect of encouraging police officers to employ unlawful means to achieve unlawful purposes.

43.     The City of Chicago conceals material evidence of criminal conduct by police officers. The City of Chicago's failure in this regard has the effect of encouraging police officers to employ unlawful means to achieve unlawful purposes.

44.     The City of Chicago facilitates a policy of, "circling the wagons," wherein officers accused of misconduct are given the opportunity to conspire with each other about criminal conduct. The City of Chicago's failure in this regard has the effect of encouraging police officers to employ unlawful means to achieve unlawful purposes.

45.     The City of Chicago maintains a strict, "code of silence," wherein officers lie and commit perjury rather than report the criminal offenses of other officers. The City of Chicago's failure in this regard has the effect of encouraging police officers to employ unlawful means to achieve unlawful purposes.

46.     At all times relevant to this Complaint, the City of Chicago maintained a policy and practice of permitting supervisory police officers to reject complaints of criminal conduct by police officers without any explanation. The City of Chicago's failure in this regard has the effect of encouraging police officers to employ unlawful means to achieve unlawful purposes.

47.     In furtherance of the policy described in the above paragraph, Superintendent Cline, Debra Kirby, Dana Starks, and other unknown coconspirators have a policy and practice of conspiring to reject complaints of criminal conduct by police, which complaints were investigated and sustained by IAD and OPS.

48.     The effect of the conspiracy described in the above paragraph was that IAD and OPS investigators ceased investigating complaints of criminal conduct by police officers and

11

ceased sustaining complaints of criminal conduct by police officers because such activities became futile.

49.　　The City of Chicago's practices and policies described above are intended to prevent, hinder, and obstruct complaints against police officers without regard to their merit and in fact have such an effect.

50.　　The City of Chicago's practices and policies described above obstructs investigations into criminal misconduct by police officers, obstructs justice, and obstructs the communication of criminal offenses by police officers to federal, state, and county authorities. Plaintiffs were terrified to come forward because of the vast law enforcement apparatus arrayed against them. The SOS conspiracy involved either directly or in complicity many parties including: the Special Operations Section itself, the Chicago Police Department, the Internal Affairs Division of the Chicago Police Department, the State's Attorney's office, the Office of Professional Standards, and high ranking members of the Chicago municipal government. Only when the facade surrounding the SOS section began to crumble did plaintiffs feel safe coming forward with their claims.

## Count I

### 18 U.S.C. Section 1961 *et. seq.* – Racketeer Influenced and Corrupt Organizations

1-50.　Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.　　The racketeering enterprises in this cause of action are the City of Chicago, Chicago Police Department, and Special Operations Section thereof, in which the defendant officers and other officials used their official positions to illegally commit a pattern of

racketeering activity, including but not limited to kidnapping, robbery, extortion, dealing controlled substances, obstruction of justice, obstruction of Federal, State, and local law enforcement, obstruction of criminal investigations, intimidation of witnesses, retaliation against witnesses, interference with commerce by threats and violence, influencing, delaying, and preventing testimony, and hindering, delaying, and preventing the communication of federal offenses to law enforcement agencies and judicial officers, as detailed more fully throughout this Complaint.

52.    As detailed above, the individual defendants and other as of yet unknown officials and officers conducted and participated in the conduct of the City of Chicago, Chicago Police Department, and Special Operations Section through a pattern of racketeering activity, and conspired amongst themselves and others unnamed to do the same.

53.    As a direct and proximate result of the racketeering violations described above, plaintiffs were injured in their business and property, including but not limited to lost income in the past, present, and future and damage to the business' reputation.

54.    The police officer defendants are employed by and associated in fact with said enterprises, the City of Chicago, Chicago Police Department, and Special Operations Section.

55.    The individual defendants, while acting individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, directly and indirectly, conducted and participated in the affairs of the City of Chicago, Chicago Police Department, and Special Operations Section, through a pattern of racketeering activity, as is described throughout this Complaint.

WHEREFORE, plaintiffs demand judgment against the city for compensatory damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and further demands judgment against the individual officers, jointly and severally, for treble damages in an amount in excess of FIFTEEN MILLION DOLLARS ($15,000,000.00), and further demands attorneys' fees and the costs of this action, and for such other and further relief as this Court deems just, proper, and equitable.

### Count II

**42 U.S.C. Section 1983 Fourth Amendment Violations — Illegal Searches and Seizures**

1-50.   Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.     The searches and seizure of plaintiffs' persons and homes, performed willfully and wantonly by the defendants, individually and in conspiracy with each other, were in violation of plaintiffs' right to be free of unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. Section 1983.

52.     As a proximate result of the above-detailed actions of defendants, plaintiffs were injured, including the deprivation of their liberty and the taking of their property. The violations proximately caused plaintiffs significant financial loss, exposed plaintiffs to public scandal and disgrace, caused damage their property, and caused plaintiffs to incur various expenses, all to their damage.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION

14

DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

### Count III

### 42 U.S.C. Section 1983—Due Process

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.    The Due Process rights of Plaintiffs were violated by the taking of their property and liberty, without being afforded due process of law.

52.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful inference to Plaintiff's constitutional rights.

53.    The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

### Count IV

15

### 42 U.S.C. Section 1983—Failure to Intervene

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.    As a result of their failure to intervene, supervisory defendants, policy defendants, and police officer defendants, sanctioned, encouraged, and participated in the violations of plaintiffs' rights. Defendants had ample opportunity to intervene, and could have prevented the harm to plaintiffs and many others. Instead, defendants chose to pursue a course of indifference towards and directly supported the violations perpetrated by the Chicago Police Department. In this way, defendants helped to enforce the status quo of law enforcement apartheid that exists in many Chicago neighborhoods.

52.    As described in the preceding paragraphs, the conduct of the non-intervening defendants, acting under color of law and within the scope of their employment, violated federal statutes and the United States Constitution.

53.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful inference to Plaintiffs' constitutional rights.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count V

### 42 U.S.C. Section 1983 - *Monell* Claim Against City of Chicago

1-50.   Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.   The constitutional violations detailed above were caused in a substantial capacity by the customs, policies, and practices of the defendants, as promulgated, enforced, and disseminated by the City of Chicago, the Mayor Richard Daley, the City Council, members of the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board, members of the Chicago Police Board, the Office of Professional Standards, the Internal Affairs Division of the Chicago Police Department, the State's Attorneys Office, Superintendent Cline, and unknown Chicago policy makers whereby those charged with ensuring compliance with the Constitution of the United States, in this case and many other cases, instead deliberately, willfully, and wantonly encouraged the infliction of physical and psychological intimidation onto the citizens of the City of Chicago in violation of the United States Constitution.

52.   The customs, policies, and practices that caused the constitutional violations herein alleged include:

(a) warrantless searches and seizures of minority citizens and their businesses;

(b) the denial of substantive due process, abuse of legal process, malicious prosecution, and filing of false charges against innocent persons by Chicago Police Officers;

(c) the filing of false and incomplete police reports to hide criminal and unconstitutional conduct by officers;

(d) a code of silence whereby officers refuse to report the unconstitutional and criminal

misconduct of other officers, including the unconstitutional and criminal conduct alleged in this Complaint;

(e) a code of silence whereby officers remain silent or give false and misleading information during official investigations to cover up unconstitutional and criminal misconduct, to protect themselves, and to protect other officers;

(f) Municipal policy-makers condone and facilitate this code of silence, through their official and unofficial policy, and regarding their bargaining posture vis-à-vis the Fraternal Order of Police.

(g) the willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in regards to unconstitutional and criminal misconduct;

(h) the willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in order to prevent unconstitutional and criminal misconduct by police officers.

(i) the failure to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers;

(j) the failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct;

(k) the encouragement and propagation of the misconduct complained of in subparagraphs (a)-(j) by stamping official approval on officers' unconstitutional and criminal misconduct through the Office of Professional Standards and IAD;

(l) the approval, support, and encouragement of unconstitutional and criminal misconduct

by police officers to avoid financial loss;

(m) and the failure to deter police officers from engaging in unconstitutional and criminal misconduct by maintaining deficient, defective, and ineffectual investigatory and disciplinary procedures, as promulgated by the Office of Professional Standards.

53.  The policies, practices, and customs herein complained of are so prevalent and widespread within the Chicago Police Department as to put City of Chicago policy makers on actual and implied notice that such policies existed in full force and effect.

54.  Despite widespread and obvious patterns of police misconduct—conduct so prevalent that it has become de facto municipal policy, OPS and IAD make findings of wrongdoing in a disproportionately small number of cases.

55.  As a matter of express policy, the City of Chicago refuses to consider patterns of misconduct allegations, when evaluating the merits of particular civilian complaints. OPS is forbidden by the City to take into account any officer civilian complaint history that does not rise to the level of sustained.

56.  The Chicago Police Department does not include an evaluation of civilian complaint history in its performance evaluation and promotion processes. Police officers have little cause to fear that extensive patterns of alleged misconduct will hinder their professional advancement in any way—much less result in discipline.

57.  City of Chicago policy makers acted willfully, wantonly, and deliberately indifferent towards the constitutional rights of plaintiffs by accepting, monitoring, maintaining, protecting, and encouraging the unconstitutional policies, practices, and customs listed in this Complaint.

58. By acting willfully, wantonly, and deliberately indifferent towards the constitutional rights of plaintiffs, City of Chicago policy makers approved, encouraged, and caused the constitutional violations alleged in this Complaint.

59. As a proximate result of the above-detailed actions of the defendants and City of Chicago policy makers, plaintiffs were injured, including financial loss, injuries resultant from the above detailed constitutional violations, embarrassment, and other emotional injuries. In addition, the violations proximately caused the plaintiffs financial loss, exposed them to public scandal and disgrace, damaged their reputation, and caused them to incur various expenses, all to their damage.

WHERFORE, plaintiffs demand judgment against the defendants for compensatory damages in an amount in excess of FIVE MILLION ($5,000,000.00), plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this Court deems just, proper, and equitable.

## Count VI

### 42 U.S.C. Section 1983—Equal Protection

1-50. Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51. As a result of defendants actions, plaintiffs were denied equal protection of the law, as guaranteed by the United States Constitution.

52. Specifically plaintiffs as members of a minority community were singled out for unlawful treatment in a manner unlike similarly situated individuals of other races, in other parts of the city.

53.     There is no important governmental objective, nor even any rational basis for the disparate treatments of plaintiffs and similarly situated individuals in other parts of the city.

54.     Plaintiffs were further singled out for unlawful treatment because of their Latino ethnicity.

55.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count VII

### 42 U.S.C. Section 1983—Equal Protection

1-50.   Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.     As a result of defendants actions, plaintiffs were denied equal protection of the law, as guaranteed by the United States Constitution.

52.     Specifically plaintiffs as non-police officers were singled out for unlawful treatment in a manner unlike police officers who have received a de facto super-citizen status in the City of Chicago.

53.     There is no rational basis for the disparate treatments of plaintiffs and similarly situated individuals in other parts of the city.

54.     Plaintiffs were further singled out for unlawful treatment because of their non-police officer status.

55.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

### Count VIII

### Section 1985 — Conspiracy to Deny Equal Protection

1-50.   Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.     As detailed above, the defendants conspired and agreed among themselves to deprive plaintiffs of their equal protection rights as guaranteed by the Constitution of the United States, and to obstruct justice.

52.     In so doing, the defendant officers were motivated in their violations of the rights of plaintiffs, by discriminatory-based racial animus towards the predominantly Latino patrons of

Caballo.

53.    The City of Chicago and Chicago Police Department have a widespread policy and practice of singling out the minority patrons of minority businesses for disparate treatment, whereas businesses in predominantly Caucasian neighborhoods have never been the subject of similar police raids like the one that led to the victimization of Mr. Reyes and his family.

54.    As detailed above, the defendants committed overt acts in furtherance of the conspiracy.

55.    As a proximate result thereof, plaintiffs were damaged, including financial loss and damage to their reputation and occupation.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count IX

### Section 1983 — Excessive Force

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.    The actions of the Officer Defendants, and Unknown Chicago Police Officers, constituted unreasonable, unjustifiable, and excessive force against plaintiffs, thus

violating Plaintiffs' rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C., Section 1983.

52.    As a proximate result of the above-detailed actions of defendants, plaintiffs were injured, including severe, permanent, and life-threatening physical injuries, pain, mental suffering, anguish and humiliation.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count X

### 745 ILCS 10/9-102

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

50.    Defendant City of Chicago is the employer of all police officer defendants.

51.    The Officer Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should any of the individual officers be found liable on one or more of the claims set forth above, Plaintiffs demand that, pursuant to 745 ILCS 10/9-102, the Defendant City of Chicago be found liable for any judgment plaintiffs obtain against said defendants, as

well as attorneys fees and costs awarded.

## Count XI

### Trespass — State Claim

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.    In the manner described more fully above, without any lawful justification, Defendants knowingly and intentionally intruded upon Plaintiffs' premises, in which they had possessory interests.

52.    As a result of the Defendants' unjustified and unlawful trespass, Plaintiffs suffered injury, including financial loss and damage to their reputation.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for compensatory damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00) and further demands judgment against the individual officers, jointly and severally, for punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus attorney's fees pursuant to statute and the costs of this action and such other and further relief as this Court deems just, proper, and equitable.

## Count XII

### Malicious Prosecution — State Claim

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.    By the actions detailed above, and by participating in the above-described conspiracy, the individual defendants knowingly sought to and did in fact maliciously prosecute plaintiff Jose Reyes on false charges for which they knew there was no probable cause.

52.    The City and other policy defendants are sued in this Count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of this employment.

53.    As a direct and proximate result of the malicious prosecution, plaintiffs were damaged, including the value of their lost liberty, attorneys' fees, lost work, exposure to public scandal and disgrace, damage to their reputation, mental and emotional suffering, humiliation and anguish.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Officer Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00) and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and for such other and additional relief as this court deems equitable and just.

### Count XIII

### Intentional Infliction of Emotional Distress — State Claim

1-50.    Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here..

51.    The above-detailed conduct by the defendants was extreme and outrageous, exceeding all bounds of human decency.

52.    Defendants performed the acts detailed above with the intent of inflicting severe

emotional distress on plaintiffs with knowledge of the high probability that the conduct would cause such distress.

53.     As a direct and proximate result of this conduct, plaintiffs did in fact suffer severe emotional distress, resulting in injury to their minds, bodies, and nervous systems, including loss of sleep, mental anguish, nightmares, anxiety attacks, stress disorders, phobias, and flashbacks.

54.     As of the filing of this Complaint, plaintiffs continue to suffer from the above described injuries caused by the extreme and outrageous conduct of the defendants.

55.     The City is sued in this Count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of this employment.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiff demands judgment against the Officer Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00) and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and for such other and additional relief as this court deems equitable and just.

### Count XIV

### Assault — State Claim

1-50.   Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.     The above-detailed conduct by defendants caused plaintiffs to suffer apprehension.

27

52.　　The plaintiffs in fact suffered such apprehension and their apprehension was reasonable.

53.　　The above described conduct by defendants caused the plaintiffs to reasonably apprehend imminent bodily harm and death.

54.　　Defendants performed the acts detailed above with the intent of causing apprehension in the plaintiffs.

55.　　As a direct and proximate result of this conduct, plaintiffs suffered injury to their minds, bodies, and nervous systems, including loss of sleep, mental anguish, severe depression, nightmares, anxiety attacks, stress disorders, phobias, and flashbacks.

56.　　As of the filing of this Complaint, plaintiffs continue to suffer from the above described injuries caused by the defendants' conduct.

57.　　The City is sued in this Count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of this employment.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiff demands judgment against the Officer Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00) and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), plus the costs of this action and attorney's fees, and for such other and additional relief as this court deems equitable and just.

### Count XV

### Battery — State Claim

1-50.   Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

51.    By the actions detailed above, and by participating in the above-described conspiracy, Defendants intentionally made offensive bodily contact against plaintiffs, and inflicted bodily harm to plaintiffs.

52.    By the actions detailed above, and by participating in the above-described conspiracy, Officer Sheehan performed the acts detailed above with the intent of inflicting physical harm to plaintiffs. Plaintiffs were physically harmed.

53.    As a direct and proximate result of the battery, plaintiffs were injured, including but not limited to physical injuries, lost liberty, lost work, exposure to public scandal and disgrace, damage to their reputation, mental and emotional suffering, humiliation, anguish, and the loss of a normal life.

54.    The City is sued in this Count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of Defendant City, and while acting within the scope of this employment.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiff demands judgment against the Officer Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages against defendants officers in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00) and because these defendants acted maliciously, wantonly, or oppressively, punitive damages in an amount in excess of FIVE MILLION DOLLARS

($5,000,000.00), plus the costs of this action and attorney's fees, and for such other and

additional relief as this court deems equitable and just.

Respectfully submitted,

By: One of their attorneys

PLAINTIFF DEMANDS TRIAL BY JURY.

Jared S. Kosoglad
Christopher R. Smith
A Law Office of Christopher R. Smith
119 North Peoria, Suite 3A
Chicago, Illinois 60607
312-432-0400