IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE REYES, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 07 C 6877 |
| | ) | |
| CITY OF CHICAGO, et. al., | ) | JUDGE BUCKLO |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs Jose Reyes and Sonia Olazaba, on behalf of themselves individually and as the parents and guardians of Denise Fernandez and Kimberly Fernandez, minors, through their attorneys, A Law Office of Christopher R. Smith, respectfully request that this Honorable Court deny Defendants' Rule 12(b)(6) motions to dismiss their complaint. In support of their response, Plaintiffs submit the following memorandum.

**INTRODUCTION**

On March 27, 2004, more than twenty-five members of the Special Operations Section of the Chicago Police Department, stormed into Caballos, a southwest side bar. Uniformed Chicago Police Officers robbed and kidnapped patrons, illegally searched almost everyone in the bar, and falsely arrested several men. Believing that they had turned off the security monitor, defendants were never-the-less caught on camera. On September 28th, 2007, images of the illegal raid were published on the front page of the Chicago Tribune. This public revelation undermined the City's position that the illegal activities of the SOS were limited to the six SOS officers that have been indicted in state court. Just days after the footage was released, coupled with the FBI

1

revelation that Defendant Finnigan was caught on tape threatening to kill witnesses in the state court cases, the City disbanded the SOS unit. The federal grand jury has been investigating criminal activity, including supervisor liability.

Security footage had been turned over to the CPD's internal Affairs Division in 2004, but no action was taken to discipline officers involved in this matter or to prevent future abuses, until the video aired publicly. Mr. Reyes and his family, terrified over what had happened on the night of March 27, 2004, and shocked that no action had been taken against officers who videotaped committing criminal misconduct, reluctantly remained quiet IAD's silence in the face of videotaped perjury and criminal officer misconduct, seemed to indicate Defendant City's complicity. Until the SOS scandal broke the Reyes family could not hope to press their case against the united front of Defendant City's law enforcement machinery.

Plaintiffs have brought suit against both the individual defendants who participated in the illegal searches, robbery, and kidnapping as well as the city policymakers who at a minimum enabled and covered up the criminal misconduct of the SOS. *See* Exhibit 1, Complaint. City policy makers certainly were on notice; over fifty lawsuits, hundreds of civilian complaints, and state and federal indictments, all consistently describe a pattern of racketeering within the CPD's Special Operations Unit. High level city and police department officials appear to be within the scope of the federal investigation. Plaintiffs filed their lawsuit on October 7, 2007. Plaintiffs assert § 1983 claims, a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, and pendent state law claims. *See* Exhibit 1, Complaint. Defendants now seek to dismiss all of Plaintiffs' claims, arguing that certain of them are time-barred and/or that they are insufficiently pled. Plaintiffs respectfully ask this Court to deny Defendants' Motion and to allow Plaintiffs'

claims to proceed. In the alternative, if this court believes that any of Plaintiffs' claims are not sufficiently pled; plaintiffs respectfully request leave to amend their complaint.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, a court accepts as true all well-pled factual allegations of the complaint, drawing all reasonable inferences in favor of a plaintiff. Forseth v. Village of Sussex, 199 F.3d. 363 (7th Cir. 2000). A Rule 12(b)(6) motion may only be granted if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The liberal notice pleading standard of federal practice applies equally to civil rights claims brought pursuant to Section 1983. Leatherman v. Tarrant County Narcotics Intelligence and Coord. Unit, 507 U.S. 163, 164-69 (1993). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a cause of action . . ." Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F. 3d 247, 251 (7th Cir. 1994). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).

I.  **PLAINTIFFS HAVE SUFFICIENTLY PLED A CIVIL RICO CLAIM AGAINST ALL DEFENDANTS**

The Defendants argue that Plaintiffs do not have standing to sue under RICO because they cannot present evidence that they incurred injury to their "business or property" within the meaning of § 1964, citing Evans v. City of Chicago, 434 F.3d 916 (7th Cir. 2006). Defendants also argue that Plaintiffs' RICO claim is not adequately plead. Separately, Defendant City argues that as a threshold matter, Civil Rico Statutes do not apply to them. Plaintiffs disagree.

3

Defendants do not argue that Plaintiffs' RICO claims are untimely; Plaintiffs have filed their action well within the four year Civil RICO Statute of Limitations. <u>Rotella v. Wood</u>, 528 U.S. 549 (2000).

### A.     The Plaintiffs Allege Damage to Their Business and Property

The Complaint sets out that Defendants robbed Mr. Reyes of $1,000 at Caballos bar. Defendants then kidnapped Mr. Reyes and unlawfully invaded his leasehold property, where all plaintiffs lived. Defendants ransacked Mr. Reyes' house, seizing and stealing personal property which included jewelry which belonged to all plaintiffs. *See* Complaint ¶ 12 and ¶¶ 19-21. Through these thefts, carried out to advance Defendants' racketeering enterprise, Plaintiffs were injured in their "business or property" within the meaning of § 1964 (RICO), Defendants' citation of *Evans* is inappropriate because defendants attempt to apply the higher standard of summary judgment to their motion to dismiss.

### B.     The Plaintiffs Have Sufficiently Pled a Civil RICO Claim

To properly plead a civil RICO claim, a plaintiff must allege injury to his business or property through violation of 18 USC § 1962 of the Civil RICO statutes. 18 U.S.C. § 1964(c). Illegal activity under the Civil RICO statute includes, amongst other things, kidnapping, robbery, and the "obstruction of justice," by means of offering false testimony or evidence in a judicial proceeding. Civil RICO liability also requires that the Plaintiffs have suffered concrete and actual pecuniary loss as a result of the racketeering activity. Plaintiffs have made the required allegations.  Plaintiffs' complaint alleges that all officer defendants participated in the robbery, criminal conspiracy, kidnapping, intimidation, retaliation, interference with commerce,

4

preventing testimony, falsifying testimony, and hindering the communication of federal offenses to law enforcement agencies, and more. *See* Complaint, ¶ 12. Plaintiffs have alleged that this misconduct resulted in concrete pecuniary losses to all Plaintiffs. This is sufficient to survive a 12(b)(6) motion. Plaintiffs need not try their case on the pages of their complaint. If, however, this Court is inclined to find Plaintiffs' RICO claim insufficiently pled, Plaintiffs respectfully request leave to amend the complaint to cure any defects since the Statute of Limitations for this count has not expired.

RICO liability hinges not only on the defendants having committed predicate acts, but also that the acts were part of a pattern of racketeering behavior. *See* 18 U.S.C. § 1963(c). "A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period." Goren v. New Vision Intern, Inc., 156 F.3D 721, 728-29 (7th Cir. 1998). In addition, a plaintiff must "satisfy the co-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." Midwest Grinding Co., Inc. v. Spitz, 976 F.3d 1016, 1022 (7th Cir. 1992). This "continuity plus relationship" test is "both a closed- and open-ended concept." *Id.* In the case of a plaintiff alleging a pattern over a closed period of time, as here, "a RICO plaintiff must 'prov[e] a series of related predicates extending over a substantial period of time.'" Vicom, Inc. v. Harbridge Merch. Serv., Inc., 20 F.2d 771, 779 (7th Cir. 1994). Factors relevant to this durational measure "include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.

The Complaint sets out the racketeering enterprises were the City of Chicago, the

5

Chicago Police Department, and the Special Operations Section thereof. *See* Complaint, ¶ 51. The Complaint sets out that the Defendants conducted the affairs of these enterprises through a pattern of racketeering activity. *See* Complaint, ¶ 51. Over fifty lawsuits, hundreds of civilian complaints, and state and federal indictments, consistently describe a pattern of racketeering within the CPD's Special Operations Unit. In fact Plaintiff Jose Reyes alleges that Defendants raided another bar that night. *See* Complaint, ¶ 14.

### C.  Enterprise Liability Applies to Defendant City

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity . . ." 18 U.S.C. § 1961(4). The defining feature is "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." Daniels v. Bursey, 313 F. Supp. 2d 790, 812 (N.D. Ill. 2004), quoting Stachon v. United Consumers Club, 229 F.3d, 673, 675 (7thCir. 2000).

The Seventh Circuit has considered whether a public entity, such as a police department, may constitute an "enterprise" under RICO. *See* United States v. Grzywacz, 603 F.2d 682, 686 (7th Cir. 1979). Recognizing that Congress intended the broad definition "to protect both the public and private sectors from the pervasive influences of racketeering," the court held that "public entities and individuals may constitute § 1961(4) enterprises through which racketeering is conducted." *Id.* at 686-87; *accord* United States v. Brown, 555 F.2d 407 (5th Cir. 1977); United States v. Frumento, 563 F.2d 1083 (3d Cir. 1977). *See also* United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313, 1319 (7th Cir. 1981) (Madison County Sheriff was enterprise under RICO); De Falco v. Bernas, 244 F.2d 286 (2d Cir. 2001) (governmental unit can be an "enterprise" under RICO); Pelfresne v. Rosemont, 22 F. Supp. 2d 756 (N.D. Ill. 1998) (village

6

and defendants associated therewith qualified as enterprise under RICO); United States v. Long, 651 F.2d 239 (4th Cir. 1981) (Senator's office can be "enterprise" under RICO); United States v. Blackwood, 758 F.2d 131 (7th Cir. 1985) (circuit court).

Further, "RICO is to be read broadly." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985). "[Legitimate enterprises] enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences." Id. at 498. The City of Chicago is no exception. "The fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'" Id. (quoting Haroco, Inc. v. American National Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (7th Cir. 1984)).

## II.    STATUTES OF LIMITATIONS

Defendants assert that Plaintiffs' Federal Civil rights and pendant state law claims are untimely as to the adult Plaintiffs. The applicable Statute of Limitations for Plaintiffs' § 1983 and § 1985 claims is two years. See 735 ILCS 5/13-202, setting the Illinois personal injury Statute of Limitations at two years. The applicable statute of limitations for the pendant state law claims is one year. Tort Immunity Act, 745 ILCS 10/8-101. Any statutes of limitation defense cannot apply to the minor Plaintiffs. Plaintiffs concede that as to Jose Reyes and Sonia Olazaba that Counts II, III, IV, VI, VII, VIII, IX, XI, XII, XIII, XIV, and XV were brought after the time allowed by the applicable statutes of limitations. Plaintiffs ask this Court to apply equitable estoppel on the Defendants' statute of limitations defense.

### A.    Any Statute of Limitations Defense Cannot Apply to the Minor Plaintiffs

Defendants' statute of limitations defense cannot apply to the minor plaintiffs who have

not yet reached the age of majority. As stated above Illinois personal injury and Tort Immunity statutes create a two year statute of limitations for Plaintiffs' Plaintiffs' federal § 1983 and § 1985 claims and a one-year statute of limitations for Plaintiffs state law claims. However, traditional statute of limitation's standards do not apply to minors. "Without doubt, Illinois has a long-established policy of protecting the right of minors to bring suit." Ferguson v. McKenzie, 202 Ill.2d 304, 314 (2001), (citing Antunes v. Sookhakitch, 146 Ill.2d 477, 493, 588 N.E.2d 1111, 1118, 167 Ill.Dec. 981, 988 (1992). While able adults can be expected to fully avenge their rights within the statute of limitations, minors may be unable to do so.  Tolling allows courts to preserve minors' claims until after they reach the age of majority.  Tolling is essential to "protec[t] minors during the period when they are unable to protect themselves." 2 C. Corman, Limitation of Actions § 10.2.1, p. 104 (1991).

      **B.**    **Equitable Estoppel**

Based he feared for his family's safety,  and because the City's initial inaction led him to believe that he would not be taken seriously, Jose Reyes could not step forward until the scandal surrounding the Special Operations Section was front page news. Indeed, Defendant Finnigan has been federally indicted for threatening to kill police officer wintesses who showed a willingness to talk about the SOS' criminal practices. Only after the tide had turned against the SOS, did Mr. Reyes, as a member of a particularly vulnerable Chicago community, feel secure and believe that others would take his word over that of elite, decorated Chicago police officers.

Judge Gettleman applied equitable estoppel for similar reasons in another case involving the SOS. *See,* Exhibit 2, Gettleman Memorandum and Opinion Order, from Cook v. City of Chicago, et. al., 06 C 5930. "Any deliberate or otherwise blameworthy conduct by the defendant

that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel in federal limitations law." Shropshear v. Corp. Counsel of the City of Chicago, 275 F.3d 593, 597 (7th Cir. 2001). Here, Plaintiffs allege that the City's policy of allowing and covering up SOS' misconduct, the silence of Chicago police officers in the face of such misconduct, and Defendant Finnigan's death threats towards fellow officers constitute such blameworthy activity. For the City, as long as the SOS was taking guns and drugs of the streets, their tactics and profiteering were ignored. Defendants should not benefit from Plaintiffs using a window of safety bring their case. Defendants persistent efforts to suppress the truth about the SOS' activities should not alleviate them of liability. Based on Judge Gettleman's opinion, the actions of police officers should also be imputed to the city for the purpose of equitable estoppel. *See,* Exhibit 2, p.5.

      C.    **Plaintiffs' Monell Claim is Timely Pled.**

Defendants assert that Plaintiffs' Monell claim was not timely filed. Plaintiffs disagree. The "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases, governs this analysis. Johnson v. Garza, Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir.1990). "The federal rule is that a claim accrues when the plaintiff knows both the existence and the cause of his injury. Blackman v. City of Kokomo, 2006 WL 694367, S.D.Ind., 2006; citing Wallace v. City of Chicago, 2006 WL 549008 (7th Cir. March 8, 2006). Plaintiffs had no good faith basis to assert a Monell claim until, at-a-minimum, state indictments were filed against the indicted SOS officers. More likely, Plaintiffs' claims could not accrue until the SOS scandal became front page news. Before this time, Plaintiffs could not know that the cause of their injuries was Defendant City's policies. Plaintiffs did not have a complete claim

9

and could not file suit against Defendant City and the Official defendants until they became aware of their culpability. State indictments were issued during the Summer of 2006, and Plaintiffs filed their claim on December 12, 2007, well before the two year statute of limitations had run.

### III.    DEFENDANTS' ALTERNATIVE GROUNDS FOR DISMISSAL ARE NOT PERSUASIVE

#### A.    Due Process

Defendants argue that Plaintiffs allegations are made in a conclusory manner, that Plaintiffs are protected by state tort remedies, and that plaintiffs' claims do not amount to a violation of the Fourteenth Amendment. As stated above, a plaintiff may plead conclusions in their complaint. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). In this case, Plaintiff has pled his complaint with a high level of particularity. Plaintiffs cannot be precluded from suit for violations of the US Constitution by the mere existence of partially overlapping state and federal remedies. The attorney's fee provision of § 1988, makes it more likely that plaintiffs would find counsel where otherwise it may be impossible. Due to the workload involved in this litigation, it is unlikely that Plaintiffs would have found counsel without such a provision. Finally, Plaintiffs have stated a constitutionally cognizable claim that they were seized and deprived of their property without the due process of law.

#### B.    Failure to Intervene

Defendants claim that Plaintiffs have not identified which police officers failed to intervene. Plaintiffs have alleged that all Defendant police officers both participated directly in the deprivation of Plaintiffs constitutional rights, and that all defendants participated in the

related conspiracy. *See* Complaint ¶ 22 and ¶ 28. Judged solely from the four corners of the complaint, defendants have a losing argument.

### C.  Conspiracy to Deny Equal Protection

Plaintiffs have alleged that all Defendant police officers both participated directly in the deprivation of Plaintiffs constitutional rights, and that all defendants participated in the related conspiracy to deny equal protection of the laws. *See* Complaint ¶ 22 and ¶ 28. The intra-corporate conspiracy does not apply, as the police officers have been sued both in their official and individual capacities. At any rate, one inference validly drawn from the complaint in plaintiffs' favor is that defendants conspired with the States' Attorneys' office, which belongs to an entirely different corporate entity. *See* Complaint ¶¶ 23-24 Finally, Plaintiffs have not alleged a corporate conspiracy, but rather a conspiracy to deny equal protection of the laws, which is governed by entirely different jurisprudence.

### D.  Malicious Prosecution

Plaintiff Reyes has alleged that he was arrested without probable cause, and that he faced a malicious prosecution. Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a cause of action . . ." <u>Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F. 3d 247, 251 (7 Cir. 1994). By the liberal standards of notice pleading, Plaintiffs must merely put defendants on notice of the nature of the allegations against them. Defendants seek to hold Plaintiffs to a standard more appropriate for a motion for summary judgment.

**CONCLUSION**

Plaintiffs respectfully request that this Court deny Defendants' motions to dismiss for the reasons argued the preceding pages of this memorandum. If this Court finds any of Plaintiffs' remaining counts inadequately plead, Plaintiffs seek leave to amend their complaint to cure any such defects. Plaintiffs ask this court to use the doctrine of equitable estoppel to preclude the defendants' statutory defense.

Respectfully submitted,

___/s/ James M. Baranyk,
One of the attorneys for Plaintiffs

Christopher R. Smith
A LAW OFFICE OF CHRISTOPHER R. SMITH
119 North Peoria, Suite 3A
Chicago, Illinois 60607
312-432-0400

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he served the foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS to:

| **BY ELECTRONIC MEANS** | | |
|---|---|---|
| John Lamantia<br>2505 S. Des Plaines Avenue<br>North Riverside, IL 60546 | Daniel Noland, Terrence Burns, Molly Thompson<br>10 South Wacker Dr.<br>Suite 2300<br>Chicago, IL 60606<br>(866) 546-2597 | Geri Yanow, Jonathan Green, Joel Sandoval<br>30 N. LaSalle Street<br>Suite 1400<br>Chicago, IL 60602 |

by electronic means on August 22, 2008.

/s  James M. Baranyk
James M. Baranyk

Christopher R. Smith
A Law Office of Christopher R. Smith
119 N. Peoria Ave., Suite 3A
Chicago, Illinois 60607
312-432-0400